UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **MILES J GUIDRY #733356** | **CASE NO.  6:23-CV-00632 SEC P** |
| **VERSUS** | **JUDGE ROBERT R. SUMMERHAYS** |
| **TIM HOOPER** | **MAGISTRATE JUDGE CAROL B. WHITEHURST** |

# REPORT AND RECOMMENDATION

Before the Court is a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 filed by pro se Petitioner Miles J. Guidry ("Guidry").  Guidry is serving a life sentence at the Louisiana State Penitentiary in Angola, Louisiana following a conviction of second-degree murder.  Guidry challenges his conviction and sentence in the Fifteenth Judicial District Court, Lafayette Parish.

Because Guidry is not entitled to relief, the Petition should be DENIED and DISMISSED WITH PREJUDICE.

## FACTUAL AND PROCEDURAL BACKGROUND

According to the Louisiana Third Circuit Court of Appeals:

On November 28, 2015, the victim, Claire Walley, and Defendant brought their four-week-old son to the victim's mother's house so that the couple could go out and celebrate Defendant's birthday. At approximately 11:40 p.m., the victim and Defendant returned to pick up their son, talked to the victim's mother about returning the next day to watch the Saints game, and then went home.

> The next morning at about 6:00 a.m., Defendant's mother received a call from Defendant instructing her to come over to his home he shared with the victim and told his mother to enter through the back door. Once Defendant's mother arrived, she tried to enter through the back door, but it was locked, so she let herself in through the side door and discovered a trail of blood on the floor that lead to the victim. Defendant's mother then observed the victim lying on the floor in a pool of blood, with more blood coming from a cut on her neck, and a knife nearby. After calling her husband for support, she then called 911 as she tended to her grandson who she found crying, but unharmed, in a back room of the house. One of the responding officers, Deputy Jordan Ancelet, arrived and found two deputies on the scene. The three officers then entered the residence and found the deceased victim on the floor. The officers began to search the house to make sure there were no other occupants. After completing the sweep of the house, the officers exited the house to avoid contaminating the crime scene. The officers then ran the information on Defendant's vehicle to attempt to locate it, and cameras located the vehicle, via its license plate, going into Texas at about 3:49 a.m. Defendant was subsequently stopped for speeding in Woodville, Texas and issued a citation; however, the officer was delayed in receiving information that there was a warrant for Defendant's arrest. Defendant was eventually located in Glendale, Colorado, when Officer Trace Warrick observed Defendant's vehicle parked in an empty parking lot at 4:00 a.m. on December 7, 2015. After the officer ran the license plate and learned of the warrant for a homicide connected with a possible occupant of the vehicle, Defendant was handcuffed, and the vehicle was treated as a crime scene. Defendant was then sent back to Lafayette and booked into jail.

*State v. Guidry*, 2018-867 (La.App. 3 Cir. 5/8/19); 271 So.3d 275, 279–80, *writ denied*, 2019-01363 (La. 7/24/20); 299 So.3d 66.

At trial, evidence was presented that showed Guidry's blood was present on the victim's body and on the murder weapons; the clothes Guidry was last seen in were found at the crime scene covered in the victim's blood; Guidry's blood was

found throughout the house; and Guidry was the last person seen with the victim. Additionally, when Guidry was arrested, a handwritten note stating his regret for what he had done was found in his vehicle. *Id.* at 289.

After a unanimous guilty verdict, Guidry was sentenced to the statutorily mandated life imprisonment without benefits. *Id.* at 279.

On appeal, Guidry raised the following errors: (1) improper admission of evidence of other crimes; (2) improper denial of defense counsel's challenges for cause; (3) improper denial of defense counsel's Motion in Limine regarding a note found in Guidry's vehicle; (4) allowing Detective Neil St. Cyr to testify as an expert in several areas; (5) allowing Dr. Christopher Tape to testify to information not in his autopsy report; (6) insufficient evidence; (7) improper denial of defense counsel's Motion to Suppress Gruesome or Otherwise Extremely Prejudicial Photographs and Evidence. *Id.* at 279. After considering each assignment of error, Guidry's conviction and sentence were affirmed. *Id.* at 303. The Louisiana Supreme Court denied writs. *See State v. Guidry*, 2019-01363 (La. 7/24/20); 299 So.3d 66.

Guidry filed an application for post-conviction relief raising seven claims of ineffective assistance of counsel; asserting that the judge administered unconstitutional jury instructions; and arguing that his sentence was excessive. Rec. Doc. 9-1 at 8. The trial court denied the application. Rec. Doc. 9-1 at 74.

Guidry sought review in the Third Circuit. The appellate court determined that Guidry could not establish ineffective assistance. It also noted that Guidry should have raised his excessive sentence claim on direct appeal. Rec. Doc. 9-1 at 75-76. The Louisiana Supreme Court also denied writs, finding that Guidry could not establish that he received ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 687 (1984), and that his sentencing claim could not be raised on collateral review. *State v. Guidry*, 2022-01189, p. 1 (La. 3/7/23); 356 So.3d 1008.

## ANALYSIS

### A. RULE 4 OF THE RULES GOVERNING SECTION 2254 CASES

Under Rule 4 of the Rules Governing Section 2254 Cases, a district court may summarily dismiss a § 2254 habeas application "if it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." *Id.*

This rule differentiates habeas cases from other civil cases with respect to *sua sponte* consideration of affirmative defenses. Under Rule 4, a district court has the power to examine and dismiss frivolous habeas petitions prior to any answer or other pleading by the state. This power is rooted in "the duty of the court to screen out frivolous applications and eliminate the burden that would be placed on the

respondent by ordering an unnecessary answer." *Kiser v. Johnson*, 163 F.3d 326, 328 (5th Cir. 1999) (citing 28 U.S.C. § 2254 Rule 4 Advisory Committee Notes).

**B.  STANDARD OF REVIEW**

Under § 2254(d), a federal court may only grant relief if the state adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court"; or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2).  A state court decision is deemed "contrary to" clearly established federal law "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Court's] precedent." *Jenkins v. Hall*, 910 F.3d 828, 832 (5th Cir. 2018) (citing *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003)).

"It is an unreasonable application of Supreme Court precedent 'if the state court identifies the correct governing legal rule from [the] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case.'" *Id.* quoting *Salts v. Epps*, 676 F.3d 468, 473–74 (5th Cir. 2012)).  The "state court's findings of fact are entitled to a presumption of correctness" that may be overcome

5

only by "clear and convincing evidence." *Leal v. Dretke*, 428 F.3d 543, 548 (5th Cir. 2005).

To obtain habeas review, a petitioner must first exhaust state court remedies as to each claim raised by presenting the federal nature of each claim to each appropriate state court in a procedurally proper manner. *See O'Sulllivan v. Boerckel*, 526 U.S. 838 (1999); *Duncan v. Henry*, 513 U.S. 364 (1995) (per curiam); *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001). A petitioner must give the state courts a "fair opportunity to apply controlling legal principles to the facts bearing upon a constitutional claim." *Bagwell v. Dretke*, 372 F.3d 748, 755 (5th Cir. 2004), *cert. denied*, 543 U.S. 989 (2004) (quoting *Anderson v. Harless*, 459 U.S. 4, 6 (1982).

If a state court clearly and expressly bases its dismissal of a claim on a state procedural rule that provides an independent and adequate ground for the dismissal, or if the petitioner fails to exhaust state remedies rendering the claims procedurally barred by the state courts, the claim is procedurally defaulted. *See Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991). Federal habeas review of a procedurally defaulted claim is barred unless the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Id*. at 750-51 (1991); *see also Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001).

C.     INEFFECTIVE ASSISTANCE OF COUNSEL

Guidry alleges that he received ineffective assistance of counsel in violation of the United States Constitution when counsel: (1) failed to properly investigate Dr. Tape prior to trial; (2) failed to impeach Sgt. Warrick; (3) failed to object to the prosecutor's closing argument; (4) failed to impeach juror Shawna Bokenkamp; (5) failed to impeach juror Fritz Farrar; and (6) committed cumulative errors that affected Guidry's right to a fair trial.

The state courts denied the claims because Guidry could not meet the standard of *Strickland*. *See State v. Guidry*, 2022-01189, p. 1 (La. 3/7/23); 356 So.3d 1008. This Court does not decide whether the state courts' *Strickland* determination was incorrect, but whether it was unreasonable, which presents a substantially higher threshold for a petitioner to meet. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

To satisfy the first prong of *Strickland*, a petitioner must show that counsel's representation "fell below an objective standard of reasonableness." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003); *Williams v. Taylor*, 529 U.S. 362, 390-91 (2000). In so doing, a convicted defendant has the burden of proof and must overcome a strong presumption that the conduct of his trial counsel "falls within [a] wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

"No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range

of legitimate decisions regarding how best to represent a criminal defendant." *Bobby v. Van Hook*, 558 U.S. 4, 7 (2009) (quoting *Strickland*, 466 U.S. at 688-89). There is a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *See Wiggins*, 539 U.S. at 523; *Bell v. Cone*, 535 U.S. 685, 698 (2002); *Strickland*, 466 U.S. at 690.

To satisfy the "prejudice" prong, a convicted defendant must establish a reasonable probability that, but for the objectively unreasonable misconduct of his counsel, the result of the proceeding would have been different. *Wiggins*, 539 U.S. at 534; *Strickland*, 466 U.S. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding. *Strickland*, 466 U.S. at 694.

Essentially, the federal court's review must be "doubly deferential." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). "[T]he question is not whether counsel's actions were reasonable," but "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington v. Richter*, 562 U.S. 86, 105 (2011).

### 1. FAILURE TO INVESTIGATE

First, Guidry claims that his attorney failed to properly investigate Dr. Tape prior to trial. Essentially, Guidry concludes that he might have been convicted of a

lesser charge had his attorney had "properly" investigated Dr. Tape. Rec. Doc. 1-1 at 16-19.

Dr. Tape testified that he performed an autopsy on the victim and found that she suffered fatal incise wounds, which are slices made with a knife or other bladed object, across the whole front of her neck. *Guidry*, 271 So.3d at 283. Dr. Tape opined that these wounds were multiple cuts that damaged the vascular structures and airway in her neck. *Id.* Dr. Tape interpreted the neck wounds as being caused by "multiple sawing motions across the neck and that the purpose of doing that would be to kill, possibly in an attempt to decapitate the person." *Id.* When the State asked Dr. Tape what might be indicated by the left side of the cut being deeper than the right side, he stated that "it would be consistent with someone making cuts from behind the victim using their right hand." *Id.* Guidry's attorney objected to this hypothesis because Dr. Tape had not included it in his report, but the trial court overruled the objection. *Id.* When Dr. Tape testified that the wounds were not done in an instant because the sawing motion takes time, Guidry's attorney objected again, but the objection was overruled. Guidry's attorney also objected to Dr. Tape's testimony there there were several cuts because this testimony was outside the information contained in his report. Again, the trial court overruled this objection. *Id.*

In addition to objecting at trial, Guidry's attorney filed an unsuccessful Motion in Limine to exclude some of Dr. Tape's. *Id.* at 303. Guidry's attorney also moved for a mistrial based on Dr. Tape's testimony. *Id.* Despite counsel's efforts, the trial court's rulings were all unfavorable to Guidry.

Finally, although Guidry claims that his attorney should have investigated further, Guidry does not "allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989). Guidry does not establish that his attorney's performance fell below an objective standard of reasonableness. *See Strickland*, at 687-88.

Regardless, Guidry cannot meet the second prong of *Strickland*. There is no evidence that, but for the alleged misconduct of his counsel, the result of the proceeding would have been different. *See Wiggins*, 539 U.S. at 534; *Strickland*, 466 U.S. at 694. Guidry argues that the jury could have selected a lower charge but for his attorney's errors. His claim is conclusory. *See United States v. Demik*, 489 F.3d 644, 646 (5th Cir. 2007) ("[C]onclusory allegations are insufficient to raise cognizable claims of ineffective assistance of counsel.") (quoting *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000)).

Manslaughter requires "sudden passion" or "heat of blood." *See* La. R.S. 14:31(A). But those mitigating factors must be proven by a preponderance of the

evidence. *See Guidry*, 271 So.3d at 284. On direct appeal, Guidry argued that, given the couple's plans to return to the victim's mother's house the next day, if he did commit the crime, it must have been done in sudden passion and heat of blood. To further support this claim, Guidry hypothesized that the stress of school, work, and a newborn became too much, and an argument ensued, causing him to snap and kill the victim. *Id.* The appellate court found there was no evidence in the record supporting a reduction to manslaughter, and Guidry has identified none here. He cannot meet his burden of proof as to Dr. Tape.

### 2. FAILURE TO IMPEACH SGT. TRACE WARRICK

Next, Guidry claims that his attorney's assistance was ineffective for failing to "elicit impeachment evidence" from Sgt. Warrick. ECF No. 1-1 at 20. Guidry asserts that his attorney "made feeble attempts to discredit Sgt. Warrick," but his "efforts fell short because of a lack of investigation." *Id.*

Guidry alleges that there are doctors' notes indicating that an injury to Guidry's hand occurred 8-10 days after the murder, rather than the date of the murder, as Sgt. Warrick testified. Even if Guidry told a physician that the injury occurred at a later date, the evidence at trial established that, "[w]hen Defendant was arrested, he had an injury to his hand that he stated was from a self-inflicted cut that he sustained after midnight on November 29th, but he would not provide further details about how it was sustained." *Guidry,* 271 So.3d at 283. An expert for the

11

state testified that the DNA found on a straight-edge knife at the scene belonged to both Guidry and the victim. *Id.*

Guidry does not show that his attorney's alleged failure to obtain physician's notes fell below an objective standard of reasonableness. Moreover, Guidry cannot satisfy the prejudice prong. Guidry does not establish a reasonable probability that, but for the allegedly unreasonable conduct of his counsel, the result of the proceeding would have been different. *See Wiggins*, 539 U.S. at 534; *Strickland*, 466 U.S. at 694. Finally, Guidry does not overcome the double deference due to the state courts' findings.

### 3. FAILURE TO OBJECT TO THE PROSECUTOR'S CLOSING ARGUMENTS

Guidry asserts that his attorney's assistance fell below that owed under the Constitution when he failed to object to the prosecutor's closing argument. Guidry complains that the prosecutor provided "speculation" to the jury; told the jury to use "common sense" to determine whether a fingerprint was Guidry's; and told the jury that Guidry "knew she was dead because he had killed her." Rec. Doc. 1-1 at 25-26. Guidry maintains that his attorney should have objected to these statements.

Under Louisiana law, closing arguments may contain conclusions and inferences based on the evidence presented at trial. La. C.Cr.P. art. 774. None of the prosecutor's statements were improper. Trial counsel cannot be deemed ineffective for failing to make futile or unmeritorious objections. *See Miller v.*

*Thaler*, 714 F.3d 897, 904 n.6 (5th Cir. 2013) (counsel is not required to make futile motions or objections); *Roberts v. Thaler*, 681 F.3d 597, 612 (5th Cir. 2012) ("the failure to lodge futile objections does not qualify as ineffective assistance") (quoting *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990)); *Ward v. Dretke*, 420 F.3d 479, 498 (5th Cir. 2005) (counsel not ineffective for failing to lodge what would likely have been a futile objection).

Guidry cannot establish that the state courts' denial of his claim was contrary to or an unreasonable application of *Strickland.*

### 4.  FAILURE TO IMPEACH JUROR SHAWNA BOKENKAMP

Guidry argues that his attorney should have impeached Juror Shawna Bokenkamp about some postings she made on Facebook, rather than challenging her for cause. Guidry argues that Bokenkamp stated she could convict "by clear and convincing evidence," which is a lower standard than beyond a reasonable doubt. He also argues that Bokenkamp's online activity showed that she had signed a petition to deny bond to a defendant arrested for murder, and she requested that others join her in fighting to revoke the bond of a defendant facing DWI charges. Defendant believes this is evidence that she does not believe in the principle of innocent until proven guilty.

The appellate court pointed out that, "although Bokenkamp stated that clear and convincing evidence was enough for her to convict, a full reading of the

exchange shows that her understanding of what constituted clear and convincing evidence would require that the State provide 'overwhelming evidence' that Defendant was guilty and that this is actually in line with the beyond-a-reasonable-doubt standard." *Guidry*, 271 So.3d 275, 293.

Furthermore, "[a]n attorney's actions during voir dire are generally considered a matter of trial strategy." *Teague v. Scott*, 60 F.3d 1167, 1172 (5th Cir.1995). "A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983). Mere conclusory statements on the part of a petitioner do not raise a constitutional issue in a habeas case. *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983). To demonstrate actual bias, "admission or factual proof" of bias must be presented. *United States v. Bishop*, 264 F.3d 535, 554 (5th Cir. 2001).

Guidry cannot meet his burden. He does not show that attempts to impeach Bokenkamp would have been successful. Nor does it show that his attorney's unsuccessful strategy of challenging her for cause permeated the entire trial with obvious unfairness. *See Maggio, supra.* Guidry cannot show that the state courts' *Strickland* determination was objectively unreasonable.

### 5. FAILURE TO IMPEACH JUROR FRITZ FARRAR

Guidry argues that his attorney failed to establish the "depth" of the relationship between Mr. Farrar and the victim's mother. Rec. Doc. 1-1 at 32. During voire dire, Farrar stated that his wife is the step-sister of the victim's father. Guidry argued on appeal that this relationship to the victim and Farrar's relationship with members of the victim's family prevented him from being impartial. Guidry points out that, contrary to Farrar's statements that he did not know the victim's mother, the mother stated that she and Farrar were good friends." *Guidry,* 271 So.3d at 294.

Again, Guidry's attorney challenged Mr. Farrar for cause, but the trial court denied the challenge. *Id.* As noted above, "[a]n attorney's actions during voir dire are generally considered a matter of trial strategy." *Scott*, 60 F.3d 1172. Counsel's strategy cannot be the basis for an ineffective assistance of counsel claim unless it is "so ill chosen that it permeates the entire trial with obvious unfairness." *Maggio*, 717 F.2d at 206. Additionally, to demonstrate actual bias, "admission or factual proof" of bias must be presented. *Bishop*, 264 F.3d 535, 554 (5th Cir. 2001). As the appellate court noted, "Farrar unequivocally stated that his relationship with the victim's family was not a close one, and he could be impartial." *Guidry*, 271 So.3d at 294–95.

Guidry's claim that the victim's family member could have attempted to "get onto the jury to pull the blindfold from justice" is conclusory. *See Demik*, 489 F.3d at 646. Guidry fails to meet his burden under under § 2254(d) or *Strickland*.

### 6. CUMULATIVE ERRORS

Finally, Guidry claims that "the cumulative effect of errors" by his attorney affected his right to a fair trial. Rec. Doc. 1-1 at 2. The United States Court of Appeals for the Fifth Circuit has repeatedly recognized that the United States Supreme Court "has never squarely held that the cumulative error doctrine governs ineffective assistance of counsel claims." *Hill v. Davis*, 781 F. App'x 277, 280-81, fn. 2 (5th Cir. 2019) (collecting cases). As such, the state court's denial of relief could not have been contrary to non-existent Supreme Court precedent. *See Girod v. Tanner*, 20-CV-0139, 2020 WL 6730814, at *22 (E.D. La. Oct. 23, 2020), *report and recommendation adopted*, 2020 WL 7364481 (E.D. La. Dec. 15, 2020).

It is well-settled that "ineffective assistance of counsel cannot be created from the accumulation of acceptable decisions and actions." *Id.* at 520 (citing *Miller*, 200 F.3d at 286 n.6); *Sholes v. Cain*, 370 F. App'x 531, 535 (5th Cir. 2010); *Pondexter v. Quarterman*, 537 F.3d 511, 525 (5th Cir. 2008) (agreeing that "[m]eritless claims or claims that are not prejudicial cannot be cumulated, regardless of the total number raised").

Therefore, Guidry cannot meet his burden under *Strickland* and § 2254(d).

### D.     EXCESSIVE SENTENCE

Guidry claims that his sentence is excessive in violation of the Eighth Amendment to the United States Constitution. Rec. Doc. 1-1 at 2. Guidry received the statutorily mandated sentence of life imprisonment at hard labor without benefit of probation, parole, or suspension of sentence. *See* La. R.S. § 14:30.1(B).

Guidry presented this claim for the first time on collateral review. The trial court determined that the sentence was not excessive. However, neither the Third Circuit nor the Louisiana Supreme Court considered the claim because it was procedurally barred under Louisiana Code of Criminal Procedure article 930.3 and *State ex rel. Melinie v. State*, 93-1380 (La. 1/12/96), 665 So.2d 1172. *See Guidry*, 356 So.3d 1008; Rec. Doc. 9-1 at 76. Therefore, the claim is unexhausted and procedurally defaulted.

Federal habeas review of a procedurally defaulted claim is barred unless the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750-51 (1991).

Guidry does not provide an external cause for his failure to raise the excessive sentence claim on appeal. Additionally, Guidry cannot establish a fundamental

miscarriage of justice from this court's failure to consider the unexhausted and procedurally defaulted federal constitutional claims.

If a sentence is within the statutory limits, a federal habeas court will not upset the terms of the sentence unless it is grossly disproportionate to the gravity of the offense. *Harmelin v. Michigan,* 501 U.S. 957 (1991); *Solem v. Helm,* 463 U.S. 277 (1983). The Supreme Court has recognized that only the rare case will reach the level of gross disproportionality. *Id.* at 1005.

Louisiana courts consistently impose the mandatory life sentence for second degree murder, and federal courts in this Circuit have repeatedly held that Louisiana's mandatory life sentence is not, in and of itself, disproportionate to the offense. *See, e.g. Lewis v. Warden, Louisiana State Penitentiary*, 2:11-CV-1315, 2014 WL 5365401, at *10 (W.D. La. 2014); *Beaner v. La. State Penitentiary*, 2013 WL 4411093 at *9 (W.D. La. 2013); *Holmes. v. Tanner*, 2011 WL 5869396 at *6–*7 (E.D. La. 2011); *Taylor v. Cain*, 2007 WL 1805668 at *20–*21 (E.D. La. 2007). Guidry cannot establish that his life sentence is disproportional to the offense of inflicting "fatal incise wounds" "across the whole front" of the victim's neck. *Guidry*, 271 So.3d at 283. Guidry's excessive sentence claim is meritless.

## CONCLUSION AND RECOMMENDATION

Because it is evident from the Petition and attachments that Guidry is not entitled to relief, **IT IS RECOMMENDED** that the § 2254 Petition (Rec. Doc. 1) be **DENIED** and **DISMISSED WITH PREJUDICE**.

Under 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), a party may file written objections to this Report and Recommendation within 14 days of service, unless the Court grants an extension of time to file objections under Fed. R. Civ. P. 6(b).  A party may also respond to another party's objections to this Report and Recommendation within 14 days of service of those objections, again unless the Court grants an extension of time to file a response to objections.

No other briefs may be filed without leave of court, which will only be granted for good cause.  A party's failure to timely file written objections to this Report and Recommendation will bar a party from later challenging factual or legal conclusions adopted by the District Judge, except if the challenge asserts "plain error."

Pursuant to Rule 11(a) of the Rules Governing Section 2254 cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals.  Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments

on whether a certificate of appealability should issue. *See* 28 U.S.C. § 2253(c)(2). A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

Thus done and signed in Chambers this 10th day of June, 2024.

_____

Carol B. Whitehurst
United States Magistrate Judge